**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONALD C. MEADE, Individually and** | : | **CIVIL ACTION** |
| **on Behalf of All Others Similarly** | : | |
| **Situated** | : | |
| | : | |
| **v.** | : | **NO.  24-1704** |
| | : | |
| **LINCOLN NATIONAL** | : | |
| **CORPORATION, et al.** | : | |

## <u>MEMORANDUM</u>

**MURPHY, J.**                                                                                          **October 23, 2024**

### I.      Introduction

On April 23, 2024, plaintiff Donald C. Meade, individually and on behalf of all others

similarly situated, filed a class action complaint under the Securities Exchange Act of 1934 (the

"Exchange Act") related to purchases or acquisitions of Lincoln National securities between

November 4, 2020, and November 2, 2022.  DI 1 ¶¶ 1-2.  Local 295 IBT Employer Group

Pension Trust Fund (the "Pension Trust Fund") moved for appointment as lead plaintiff and for

approval of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel.  DI 10.

The motion is unopposed.  DI 22.

### II.      Factual Background & Procedural History

Lincoln National is purportedly a holding company operating multiple insurance and

retirement businesses through subsidiary companies, and uses the marketing name "Lincoln

Financial Group."  DI 1 ¶ 2.  Donald C. Meade filed a complaint on April 23, 2024, alleging that

defendants — Lincoln National Corporation, Ellen Cooper, Dennis Glass, and Randal Freitag —

"made materially false and/or misleading statements, as well as failed to disclose material

adverse facts about the [c]ompany's business, operations, and prospects."  *Id.* ¶ 5.  As a result of

defendants' "wrongful acts and omissions, and the precipitous decline in the market value" of the relevant securities, class members allegedly experienced "significant losses and damages."  *Id.* ¶ 6.

On April 24, 2024, notice of this action was published in Business Wire, "advising class members of the pendency of action, the alleged claims, the class definition, and the option of moving the [c]ourt to be appointed as lead plaintiff no later than 60 days from the date of the notice."  DI 10-1 at 4; DI 10-3.  On June 24, 2024, the Pension Trust Fund timely filed a motion for appointment as lead plaintiff and for approval of its selection of counsel.  DI 10.  Initially, three other motions were filed seeking appointment as lead plaintiff.  DI 5, 6, 7.  Each of these motions has been withdrawn.  DI 14, 18, 21.  As such, we understand that the Pension Trust Fund's motion is the only motion that remains pending and is thus unopposed.  DI 22.

**III.    Discussion**

The Pension Trust Fund seeks to be named lead plaintiff and asks us to approve its choice of lead counsel pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4.  The PSLRA establishes a procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  § 78u-4(a)(1).  First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint.  § 78u4(a)(3)(A)(i).  Next, a rebuttable presumption of being the most adequate plaintiff is given to the the person or group of persons that (1) has either filed the complaint or made a motion in response to a notice of the action; (2 ) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the

requirements of Rule 23 of the Federal Rules of Civil Procedure.  § 78u-4(a)(3)(B)(iii).

We are satisfied that the first step of the PSLRA procedure has been completed.  Notice of this action was published in Business Wire on April 24, 2024, advising class members of the pendency of action, the alleged claims, the class definition, and the option of moving to be appointed as lead plaintiff no later than 60 days from the date of the notice.  DI 10-3.  While the Pension Trust Fund has not submitted information about how Business Wire constitutes "a widely circulated national business-oriented publication or wire service" as required by § 78u4(a)(3)(A)(i), we tend to agree that it is widely circulated and business oriented.  We also note that other courts have found Business Wire to meet the requirements.  *See e.g.*, *Elkin v. Walter Inv. Mgmt. Corp.*, No. 17-2025, 2017 WL 2547292, at *2 n.4 (E.D. Pa. June 13, 2017); *Greater Pa. Carpenters Pension Fund v. Adolor Corp.*, No. 04-1728, 2004 WL 3019235, at *2 (E.D. Pa. Dec. 29, 2004).  And no other plaintiff has argued that the notice fails to meet the statutory requirements.  Moreover, April 24, 2024, was only one day after the complaint was filed, well within "20 days after the date on which the complaint [was] filed." § 78u4(a)(3)(A)(i).

We turn to the second step in which we determine whether the Pension Trust Fund (1) has either filed the complaint or made a motion in response to a notice of the action; (2 ) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  § 78u-4(a)(3)(B)(iii).  First, we find that the Pension Trust Fund timely made the present motion in response to a notice of the action.  DI 10.

Next, we evaluate whether the Pension Trust Fund has the largest financial interest in the

relief sought by the class.  The Third Circuit guides us to consider, among other things, (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs.  *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).

The Pension Trust Fund is the sole movant for lead plaintiff and also has the largest financial stake in the litigation.  It "purchased 8,600 shares of Lincoln National shares and suffered approximately $121,694 in losses."  DI 10-1 at 4; DI 10-2; DI 10-4; DI 10-5.  No other former movant presented evidence of a larger loss, and all former movants have since withdrawn their motions.  DI 14, 18, 21. [1]  Accordingly, we find that the Pension Trust Fund has the largest financial interest in the relief sought by the class.  § 78u-4(a)(3)(B)(iii).

Finally, we analyze whether the Pension Trust Fund satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  *Id.*  *Cendant* limits this inquiry to whether the Pension Trust Fund "has made a prima facie showing of typicality and adequacy."  264 F.3d at 263.  This inquiry "need not be extensive," and we "consider the pleadings that have been filed and the movant's application."  *Id.* at 264-65.  We ask (1) whether the circumstances of the Pension Trust Fund "are markedly different or the legal theory upon which the claims [of Pension Trust Fund]

---

[1] We note that Donald C. Meade, who filed the complaint, did not move for appointment as lead plaintiff.  § 78u-4(a)(3)(B)(iii) suggests that the individual who filed the complaint need not separately move for appointment as lead counsel.  However, we note that the Pension Trust Fund filed a notice representing to us that its motion is unopposed, DI 22, to which Mr. Meade has not objected.  Out of an abundance of caution, we assess whether Mr. Meade has the largest financial interest in the relief sought by the class.  According to the complaint, his losses are in the $10,000 range, which is a lower financial interest than shown by the Pension Trust Fund.  *Compare* DI 1 at 46 *with* DI 10-5. Therefore, we find that Mr. Meade is not the most adequate plaintiff under § 78u-4(a)(3).

4

are based differ[] from that upon which the claims of other class members will perforce be based," and (2) whether the Pension Trust Fund "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [Pension Trust Fund's] claims and those asserted on behalf of the class." *Id.* at 265 (quoting *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988)).

The Pension Trust fund makes a prima facie showing of both typicality and adequacy. The Pension Trust Fund, like other class members, purports to have: (1) purchased Lincoln National securities during the Class Period; (2) to have been adversely affected by defendants' false and misleading statements; and (3) to have suffered damages when the truth became known. DI 10-1 at 4-5. Its claims and the claims of other class members arise out of the same course of events and are based on the same legal theories. *Id.* Thus, we agree that the Pension Trust Fund's claims are typical of those of other class members.

As to adequacy, the Pension Trust Fund has a significant direct interest in the outcome of this action, so we believe it will vigorously represent the class. *Id.* at 5-6. It is undisputed that the Pension Trust Fund is a sophisticated institutional investor with a track record of success previously serving as a lead plaintiff. *Id.* at 5. It is a multi-employer defined benefit pension plan with hundreds of millions of dollars in assets under management. *Id.* Given this background, we find the Pension Trust Fund to make a prima facie showing of adequacy.

Finally, we must ask whether the Pension Trust Fund "has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement

with that counsel." [2]  *Cendant*, 264 F.3d at 265-66; *see also* § 78u-4(a)(3)(B)(v).  We find that it

has.

Pension Trust Fund has selected Robbins Geller to serve as lead counsel and Saxton &

Stump, LLC to serve as local counsel.  We agree that Robbins Geller possesses the experience

and resources necessary to successfully litigate this large and complex action for the benefit of

the class.  DI 10-1 at 6.  Robbins Geller is a 200-attorney firm with offices nationwide and

regularly represents clients in complex class action litigation.  *Id.*  Counsel represents that its

securities practice group includes numerous former federal and state prosecutors and utilizes an

extensive group of in-house experts to aid in the prosecution of complex securities issues.  *Id.* at

7.  And we agree that Saxton & Stump, LLC's decades of experience in civil litigation provides a

sufficient basis to serve as local counsel.  *Id.* at 6.  Additionally, given the Pension Trust Fund's

position as a sophisticated institutional investor with a track record of success previously serving

as a lead plaintiff, *id.* at 5, we trust that it has the ability to "negotiate a reasonable retainer

agreement" with its counsel, *Cendant*, 264 F.3d at 265-66.

## IV.    Conclusion

Finding that it has satisfied each of the PSLRA's requirements for appointment, we

appoint the Pension Trust Fund as lead plaintiff.  As such, and finding that its selection of

---

[2] "The question at this stage is not whether the court would 'approve' that movant's choice of counsel or the terms of its retainer agreement or whether another movant may have chosen better lawyers or negotiated a better fee agreement; rather, the question is whether the choices made by the movant with the largest losses are so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class, thus disqualifying it from serving as lead plaintiff at all." *Cendant*, 264 F.3d at 266.  And we find no indication that the "way in which" the Pension Trust Fund was formed "or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff."  *Id.*

counsel is reasonably competent at this stage, we approve the Pension Trust Fund's selection of

Robbins Geller as lead counsel and Saxton & Stump, LLC as local counsel.